■ State Farm Insurance Company, as Subrogee of John J. McNamee, Appellant, v Peter A. Nichols et al., Respondents. [825 NYS2d 156]—

Crew III, J.P. Appeal from an order of the Supreme Court (O'Brien, III, J.), entered July 6, 2005 in Madison County, which granted defendants' motions for summary judgment dismissing the complaint.

In December 1999, a fire set by an unknown arsonist engulfed a two-story building owned by defendants Peter A. Nichols, Clarence Nichols and Clara Nichols, and located in the City of Oneida, Madison County. Prior to the fire, Peter Nichols leased the premises to defendant John F. Pitoniak, who operated a business on the first floor known as the Beaver's Den Tavern. The premises also included a small apartment on the second

floor. When the fire broke out, Charles Hood was sleeping in the apartment and, upon waking to heavy smoke, fled to a friend's house to call the fire department. Although the local fire department already had received two 911 calls reporting the fire by the time Hood called and it arrived at the scene a few minutes later, firefighters encountered an intense, fast moving fire that quickly spread to an adjacent building owned by John J. McNamee. Once the fire spread to McNamee's building, it encountered a 20-pound propane tank, which further fueled and intensified the fire. As a result of the blaze, McNamee's building sustained significant damage.

After McNamee claimed his losses, plaintiff, as McNamee's subrogee, commenced this action seeking to recover from the Nichols defendants and Pitoniak the sum it paid to McNamee under the subject insurance policy, to wit, $467,609.98 plus interest. Defendants separately answered and asserted cross claims against each other and, following discovery, Pitoniak moved and the Nichols defendants cross-moved for summary judgment dismissing the complaint and the respective cross claims. Supreme Court granted defendants' motions for summary judgment dismissing the complaint, finding that the record as a whole was devoid of any evidence to support plaintiff's claim that the alleged absence of smoke detectors was a substantial factor in allowing the fire to spread to the McNamee building. This appeal by plaintiff ensued.

The crux of plaintiff's argument on appeal is that the relevant state and local regulations and ordinances required smoke detectors and a fire suppression system in the Nichols building and, had such devices been present, Hood would have been alerted to the presence of the fire sooner, the local fire department would have arrived more quickly and the resulting damage to the McNamee building could have been avoided. Initially, the record does not support a finding that a fire suppression system was required. James Dowd, the First Deputy Fire Chief of the Oneida Fire Department, testified that the Nichols building was sufficiently old that it was "grandfathered" and, as such, "wasn't required to have a sprinkler system or fire alarm system or anything along those lines under the New York State Building Code." As to the issue of smoke detectors, Pitoniak testified that both the tavern and the second-floor apartment had operable smoke detectors at the time of the fire and that city officials inspected the building two months before the fire and gave him the "OK." Peter Nichols offered similar testimony, stating that he believed there were smoke detectors on the first and second floors when he leased the property to Pitoniak and

that he was not aware of any code violations prior to the fire. However, both Dowd and Francis Emmerich Jr., a sergeant in the Oneida Police Department who was part of the cause and origin investigation for the fire, testified that they did not find any evidence of smoke detectors in the Nichols building after the fire.

Plaintiff is correct in noting that the foregoing testimony is sufficient to raise a question of fact as to whether there were functioning smoke detectors in the Nichols building at the time of the fire. This issue need not detain us, however. Even assuming, as plaintiff contends, that Peter Nichols and/or Pitoniak did not have operable smoke detectors on the premises at the time of the fire, that such failure violated applicable state and local laws and, finally, that such violation constituted some evidence of negligence, plaintiff still needed to demonstrate that defendants' negligence in this regard was a substantial factor in causing the fire to spread to the McNamee building. This plaintiff failed to do.

The record establishes that a 911 dispatcher received a telephone call at 2:58 A.M. on the morning in question reporting smoke coming from the front door of the Beaver's Den Tavern, which appeared to be slightly ajar. As this caller hung up, she reported hearing a loud bang. The front door to the tavern later was observed to have been blown open with sufficient force to tear the screws from the striker plate—most likely due to the pressure and explosive forces generated by the fire. A second 911 call came in approximately 38 seconds later. The call placed by Hood was the third call the dispatcher received reporting the fire. The fire department was dispatched at 3:00 A.M. and arrived at the scene, located only 1,500 feet from the fire station, a few minutes later, where firefighters encountered an intense, fast moving fire. Subsequent investigation revealed that the fire, which was incendiary in origin, originated inside the tavern "near the center and rear interior of the building at or near the floor level." The large burn patterns observed on the floor were consistent with some type of combustible liquid, and investigators discovered melted wiring—indicating temperatures in excess of 1,981 degrees Fahrenheit. According to Dowd, the fire probably entered the McNamee building through a second-floor window "around the time the fire department arrived on the scene within five minutes one way or the other." Specifically, the fire exited the Nichols building through a first-floor window of the tavern and continued up the side of the building. A second-floor wooden balcony on the McNamee building was situated directly above the spot where the fire exited the Nichols

building. Located on this balcony was a gas grill with an attached propane tank, the valve to which had been left in the "on" position. The fire melted the rubber hose running from the tank to the grill, thereby releasing a new source of fuel for the fire. The intense heat from the fire then melted a window at or near this location, causing the window to fail and allowing the fire to enter the McNamee building. On this point, Dowd testified as follows: "It's my opinion that the fire could have been easily knocked down with a hose line if it was ordinary combustible, but when you add the propane to the mix the temperature goes way up and the volume of the fire goes way up. It [is] my opinion that the temperature from the propane grill was actually what ruined the window on the [McNamee] building and made the window fail quicker than it normally would have."

In opposition to defendants' respective motions for summary judgment dismissing the complaint, plaintiff primarily relied upon the affidavit of Robert Diamond, a certified New York State Fire Investigator. Diamond opined, in a six-paragraph affidavit, that "the fire spread from the area of origin at the [tavern] to the [McNamee] building . . . as a result of an inadequate smoke detection system." According to Diamond, an adequate smoke detection system would have alerted Hood to the presence of the fire which, in turn, would have made it possible for the fire department to respond sooner. In Diamond's view, the lack of a proper smoke detector system in the Nichols building "caused a significant delay in the discovery" of the fire in the tavern, which resulted in the spread of the fire to the McNamee building.

In our view, Supreme Court quite properly concluded that Diamond's terse, conclusory and essentially speculative affidavit falls far short of raising a question of fact as to the issue of causation. Noticeably absent from Diamond's affidavit is any indication of an opinion as to when the fire started, the rate at which it spread, the point in time at which an operating smoke detector would have alerted Hood or a passerby to the presence of the fire and/or how much sooner the fire department could have been alerted and responded to the fire had such a smoke detector operated as intended. Diamond's affidavit also fails to address, much less attempt to refute, Dowd's conclusion that it was the fuel from the propane tank that caused the window through which the fire entered the McNamee building to fail and that hindered the firefighters' efforts to contain and knock down the fire. Under such circumstances, defendants' motions for summary judgment dismissing the complaint were properly granted.

Carpinello, Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with one bill of costs.